**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-1954

VENICE PI, LLC.,
a California limited liability company

Plaintiff,

vs.

JOHN DOE 1        JOHN DOE 4
JOHN DOE 2        JOHN DOE 5
JOHN DOE 3        JOHN DOE 6

Defendants

---

## COMPLAINT

---

Plaintiff, VENICE PI, LLC, ("Plaintiff") brings this action against Does 1 through 6 ("John Doe Defendants" or "Defendants" and each a "Defendant") alleging copyright infringement and contributory copyright infringement, and seeking damages and injunctive relief. Plaintiff alleges as follows:

JURISDICTION AND VENUE

1.        This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a). Defendant's true identities are unknown at this time; however, Plaintiff's has used geolocation technology to determine that, upon information and belief, each Defendant may be found in the State of Colorado.

3.      In addition, this court has personal jurisdiction over Defendants because geolocation technology places all Defendants within this State, many of which, upon information and belief reside in this District. All of the Defendants conspired to and did commit acts of copyright infringement and contributory copyright infringement statewide and nationwide, including in this State and in this District. Defendants, therefore, should anticipate being hauled into court in this State and in this District.

JOINDER

4.      Defendants, whose true identities are unknown at this time, acted in a collective and interdependent manner via the Internet in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture, "Once Upon a Time in Venice." (the "Motion Picture") by means of interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent.

5.      This case involves one "swarm" in which numerous Defendants engaged in mass copyright infringement of Plaintiff's Motion Picture. Each Defendant illegally uploaded and shared Plaintiffs Motion Picture within this swarm.

6.      Upon information and belief, each Defendant was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing Plaintiffs copyright.

2

7.      By participating in the swarm, each Defendant participated in the same transaction, occurrence, or series of transactions or occurrences as at least the other defendants in the same swarm. In particular, Plaintiff's investigator has downloaded the Motion Picture from each Defendant identified herein. In addition, by participating in the swarm, each Defendant participated in a collective enterprise constituting "shared, overlapping facts."

8.      P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the Internet. The particular P2P protocol at issue in this suit is called "BitTorrent."

9.      For example, user John Doe 3 of Colorado initiated his or her infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows, software and adult videos. John Doe 3 then intentionally obtained a torrent file (the "Swarm Sharing Hash File" at issue in this suit, SHA1: 87613C90F985DC314, (herein after the "HASH FILE") for Plaintiffs Motion Picture from the index and intentionally loaded that torrent file into a computer program designed to read such files.

10.     With the torrent file intentionally loaded by John Doe 3, his or her BitTorrent program used the BitTorrent protocol to initiate connections with hundreds of other users possessing and "sharing" copies of the digital media described in the HASH FILE, namely, Plaintiff's Motion Picture, including with, upon information and belief, other identified John Doe Defendants. The program coordinated the copying of Plaintiff's Motion Picture to John Doe 3's computer from the other users, or peers, sharing the film. As the Motion Picture was copied to

John Doe 3's computer piece by piece, these downloaded pieces of Plaintiff's Motion Picture were then immediately available to all other Defendants for those Defendants' uses from John Doe 3's computer.

11.     Each of the John Does 1-6 performed the same acts as those described for John Doe 3, in paragraphs 9 and 10. Each of these Defendants also immediately became an uploader, meaning that each Defendant's downloaded pieces were immediately available to other users seeking to obtain the file, without degradation in sound or picture quality. It is in this way that each Defendant copied and distributed the Motion Picture at the same time. Thus, each participant in the BitTorrent swarm was an uploader (distributor) and a downloader (copier) of the illegally transferred file. Here, upon information and belief many members of the swarm at issue downloaded and uploaded portions of Plaintiff's Motion Picture to each other.

12.     This interactive data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file. Thus, after a successful download of a piece, the piece is made available to all other users.

13.     Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

4

14.     Essentially, because of the nature of the swarm uploads and downloads as described above, every John Doe infringer, in concert with its John Doe swarm members, is allowing others to steal (download from the swarm) Plaintiff's copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. This illegal data-sharing swarm is performed because each John Doe acts in an interactive manner with other John Does, including with, upon information and belief, other identified John Doe defendants, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action. Thus, there is a significant amount of infringement in this District, and a significant transmission of infringing materials to and from this District.

15.     In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.

16.     Upon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange is responsible for helping swarm members find more users that share the same data. Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

17.     Upon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and Defendants by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for

5

the requested data. Thus, swarm members are able to access a partial list of swarm members

rather than being filtered through a central computer called a tracker. By allowing members of

the swarm to rely on individual computers for information, this not only reduces the load on the

central tracker, but also means that every client that is sharing this data is also helping to hold

this worldwide network together.

18.     The torrent swarm in this case is not an actual entity, but is rather made up of

numerous individuals, acting in concert with each other, to achieve the common goal of

infringing upon the Plaintiffs copyright.

## PARTIES

19.     Plaintiff is a California limited liability company which produces, markets, and

distributes motion pictures.

20.     Defendants are a group of BitTorrent users or peers whose computers are

collectively interconnected within a swarm for the sharing of unique files. The particular file a

BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an

algorithm developed and implemented by the National Security Agency).

21.     This hash file provides access to an unauthorized copy of Plaintiff's copyrighted

Motion Picture.

22.     Defendants' infringements allow them and others to unlawfully obtain and

distribute unauthorized copies of Plaintiff's Motion Picture for which Plaintiff spent a substantial

amount of time, money and effort to produce market and distribute. The Motion picture can be

purchased legally at the following locations

> i.     https://www.amazon.com/Once-upon-Venice-Bruce-Willis/dp/B072882TSW.

> ii.    http://www.bestbuy.com/site/once-upon-a-time-in-venice-dvd-2017/5900992

6

iii.    https://www.walmart.ca/en/ip/once-upon-a-time-in-venice/6000197185670

23.    Each time a Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even one unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights in its Motion Picture.

24.    Despite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendants by name at this time. Thus, the true names and capacities, whether individual, corporate, associate or otherwise, of John Doe Defendants 1-6 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.

25.    Each Defendant is known to Plaintiff by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed. This information is provided in the attached Exhibit A. In addition, and as provided in Exhibit A, Plaintiff has learned the ISP for each Defendant, the torrent file copied and distributed by each Defendant, the BitTorrent client application utilized by each Defendant, and the location of most Defendants (by state) at the time of download as determined by geolocation technology.

26.    Plaintiff believes that information obtained in discovery will lead to the identification of each John Doe Defendant's true name and permit the Plaintiff to amend this Complaint to state the same. Specifically, Plaintiff intends to subpoena the ISPs that issued the John Doe Defendants' IP addresses in order to learn the identity of the account holders for the IP addresses.

27.      Plaintiff further believes that the information obtained in discovery may lead to

the identification of additional infringing parties to be added to this Complaint as Defendants,

since monitoring of online infringement of Plaintiff's Motion Picture is ongoing.

## STATEMENT OF FACTS

### THE COPYRIGHT

28.      Plaintiff is, and at all relevant times has been, the copyright owner of exclusive

rights under United States copyright law with respect to the Motion Picture.

29.      The Motion Picture contains wholly original material that is copyrightable subject

matter under the laws of the United States.

30.      Once Upon a Time in Venice is protected by the Copyright Act and registrations

including TXu001968528, June 25, 2015 and the pending application dated January 23, 2017.

(The Copyright) Exhibit B.

31.      Under the Copyright Act, Plaintiff is the proprietor of all right, title, and interest

in the Copyright, including the right to sue for past infringement.

32.      Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce

the copyrighted work and to distribute the copyrighted work to the public.

33.      Defendants had notice of Plaintiff's copyright rights. At least Plaintiff's Motion

Picture DVD case displays a copyright notice.

### COPYRIGHT INFRINGEMENT AND BITTORRENT

34.      BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing

data on the Internet, including files containing digital versions of motion pictures. Rather than

downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or

group of users to download and upload from each other. The process works as follows:

35.     Users intentionally download a small program that they install on their computers
— the BitTorrent "client" application. The BitTorrent client is the user's interface during the
downloading/uploading process. There are many different BitTorrent clients, all of which are
readily available on the Internet for free.

36.     BitTorrent client applications typically lack the ability to search for torrent files.
To find torrent files available for download (as made available by other BitTorrent users), users
intentionally visit torrent sites using any standard web browser.

37.     A torrent site is a website that contains an index of torrent files being made
available by other users (generally an extensive listing of movies and television programs,
among other copyrighted content). The torrent site hosts and distributes small torrent files known
as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct a
user's computer where to go and how to get the desired file. Torrent files interact with specific
trackers, allowing the user to download the desired file.

38.     The torrent file contains a unique hash identifier which is a unique identifier
generated by a mathematical algorithm developed by the National Security Agency. This torrent
file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the IP addresses of
other users who are sharing the media file identified by the unique info-hash, as well as specifics
about the media file.

39.     A BitTorrent tracker manages the distribution of files, connecting uploaders
(those who are distributing content) with downloaders (those who are copying the content). A
tracker directs a BitTorrent user's computer to other users who have a particular file, and then
facilitates the download process from those users. When a BitTorrent user seeks to download a
movie or television file, he or she merely clicks on the appropriate torrent file on a torrent site,

9

and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

40.    Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

41.    Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

42.    The life cycle of a file shared using BitTorrent begins with just one individual — the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The original file, in this matter is the HASH FILE, SHA1: 87613C90F985DC314, which provides access to Plaintiff's copyrighted Motion Picture.

43.    Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Motion Picture on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one

10

other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Motion Picture when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Motion Picture by exchanging the pieces of the Motion Picture that each one has.

44.     Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

45.     This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm. Because of the nature of the collective swarm, every infringer is — and by necessity all infringers together are —both stealing the Plaintiff's copyrighted material and redistributing it.

46.     Plaintiff has recorded each Defendant identified herein actually publishing the Motion Picture via BitTorrent, as Plaintiff's investigator has downloaded the Motion Picture from each Defendant identified herein.

11

47.    Plaintiff's Motion Picture is easily discernible as a professional work. Plaintiff created the Motion Picture using professional performers, directors, cinematographers, lighting technicians, set designers and editors. Plaintiff created the Motion Picture with professional-grade cameras, lighting, and editing equipment.

48.    At least Plaintiff's Motion Picture DVD case displays a copyright notice.

49.    At various times, Plaintiff discovered and documented its copyrighted Motion Picture being publicly distributed by Does 1-6 by and through the BitTorrent network.

50.    Defendants, without authorization, copied and distributed the audiovisual Motion Picture owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

DEFENDANTS ARE MEMBERS OF A SINGLE BITTORRENT SWARM

51.    Defendants are peer members who have each participated in one P2P network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted Motion Picture without permission.

52.    Each Defendant initiated his or her infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such file.

53.    Each Defendant is a member of a single swarm, Exhibit A.

54.    Each John Doe Defendant owns or otherwise has control of a different computer collectively connected to the Internet via an IP address that contained — or possibly still contains — a torrent file identifying Plaintiffs copyrighted Motion Picture. Each computer also contained or still contains Plaintiff's copyrighted Motion Picture, which was downloaded using the information encoded in the torrent file.

12

55.     All of the Defendants republished and duplicated the Plaintiff's Motion Picture in
an effort to deprive the Plaintiff of its exclusive rights in the Motion Picture under the Copyright
Act.

**COUNT I**

**DIRECT COPYRIGHT INFRINGEMENT**

56.     Plaintiff repeats and re-alleges each of the allegations contained in Paragraphs 1
through 55 as if fully set forth herein.

57.     Plaintiff is, and at all relevant times, has been, the copyright owner of the Motion
Picture infringed upon by all Defendants.

58.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the
exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the
public.

59.     The Plaintiff alleges that each Defendant, without the permission or consent of the
Plaintiff, has used, and continues to use, BitTorrent software to download the Motion Picture, to
distribute the Motion Picture to the public, including hundreds of other BitTorrent users, and/or
to make the Motion Picture available for distribution to others. In doing so, Defendants have
violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions
constitute infringement of Plaintiff's copyright and exclusive rights under copyright. Exhibit A
identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have,
without the permission or consent of Plaintiff, distributed the copyrighted Motion Picture *en
masse,* through a public website and any one of various public BitTorrent trackers, Peer
Exchanges, and/or Distributed Hash Tables.

13

60.    Each Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

61.    As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

62.    The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiffs copyright and ordering that each Defendant destroy all copies of the copyrighted Motion Picture made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT II

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

63.    Plaintiff repeats and re-alleges each of the allegations contained in Paragraphs 1 through 62 as if fully set forth herein.

64.    Plaintiff is, and at all relevant times, has been, the copyright owner of the Motion Picture infringed upon by all Defendants.

65.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the public.

66.    The Plaintiff alleges that each Defendant, without the permission or consent of the Plaintiff, has participated in a BitTorrent swarm directed at making the Motion Picture available for distribution to himself or herself as well as others, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the

public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available for distribution to others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

67.    By participating in the BitTorrent swarm with other Defendants, each Defendant induced, caused or materially contributed to the infringement of Plaintiff's copyright and exclusive rights under copyright by other Defendants and other swarm members. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without the permission or consent of Plaintiff, contributed to the infringement of Plaintiff's copyright by other Defendants and other swarm members.

68.    Each Defendant's acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

69.    As a result of each Defendant's contributory infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

70.    The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further contributing to the infringement of Plaintiff's copyright and ordering that each Defendant destroy all copies of the copyrighted motion picture made in violation of Plaintiff's exclusive rights to the copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

15

A.      For entry of preliminary and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture, including without limitation by using the Internet to reproduce or copy the Motion Picture, to distribute the Motion Picture, or to make the Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all copies of the Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of those downloaded Motion Picture transferred onto any physical medium or device in each Defendant's possession, custody, or control;

B.      For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff;

C.      For attorneys' fees, costs, expert witness fees, and pre- and post-judgment interest as permitted by law; and

D.      For such other and further relief as the Court deems proper.

Respectfully submitted this 14th day of August 2017.

BROWN & KANNADY, LLC

/s/ Scott T. Kannady
Scott T. Kannady, No. 29995
BROWN & KANNADY, LLC
2000 South Colorado Blvd., Suite 2-440
Denver, CO 80222
Phone: (303) 757-3800
Fax: (303) 757-3815
E-mail: scott@brownlegal.com

ATTORNEY FOR PLAINTIFF
VENICE PI, LLC
116 N. Robertson Blvd., #200
Los Angeles, CA  90048

16